IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL SAKATANI; 808 FARMS LLC; KURTIS L. DERELL; AND CAROL H. JUNG,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>CITY AND COUNTY OF HONOLULU, HAWAII; CITY AND COUNTY OF HONOLULU DEPARTMENT OF PLANNING AND PERMITTING; DIRECTOR OF CITY AND COUNTY OF HONOLULU DEPARTMENT OF PLANNING AND PERMITTING; JOHN DOES 1–10; JANE DOES 1–10; DOE GOVERNMENT ENTITIES 1–10; DOE CORPORATIONS 1–10; DOE PARTNERSHIPS 1–10; and DOE ENTITIES 1–10,<br><br>　　　　　　Defendants. | CIVIL NO. 18-00331 JAO-RLP<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND |

## I.　　INTRODUCTION

　　This case concerns a dispute over whether the City and County of Honolulu ("the City") is required to issue sewer and building permits to Plaintiffs 808 Farms LLC, Michael Sakatani, Kurtis L. Derell, and Carol H. Jung ("Plaintiffs"). After being denied sewer and building permits for the development of their properties, Plaintiffs filed suit in state court asserting state law, federal takings, and due

process claims against the City, its Department of Planning and Permitting ("DPP"), and the Director of the DPP (collectively "Defendants"). Defendants removed the case on federal question jurisdiction. Now before the Court is Plaintiffs' motion to remand pursuant to *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). After careful consideration of the parties' submissions and argument, for the reasons set forth below, the motion to remand is granted.

## II. BACKGROUND

Plaintiffs own parcels of undeveloped residential-zoned land on Papahehi Place in Honolulu. Doc. No. 1-2 at ¶¶ 1–2. Both parcels suffered from flooding and ground movement in the 1980s, which damaged portions of Papahehi Place. *Id.* ¶¶ 17, 27. According to the Complaint, the Housing and Community Development Corporation of Hawaii ("HCDCH"),[1] a public agency, purchased the parcels of land after the flooding and ground movement had damaged the properties. *Id.* ¶ 17. On October 3, 2005, the HCDCH granted the properties by quitclaim deed ("the 2005 Quitclaim Deed") to Metropolitan Maintenance, Inc. Plaintiffs subsequently purchased the properties. *Id.* ¶¶ 1, 13, 14, 16. Plaintiff 808

---

[1] The HCDCH was split into two agencies in 2005. It became the Hawaii Public Housing Authority and the Hawaii Housing Finance and Development Corporation. *See Hawaii Housing Finance & Development Corporation*, HAWAII.GOV, http://dbedt.hawaii.gov/hhfdc/about/history_html (last visited Feb. 19, 2019).

Farms, through its agent Plaintiff Sakatani, purchased its parcel of land by warranty deed on March 2, 2016. *Id.* ¶¶ 1, 13. Plaintiffs Darell and Jung co-purchased their parcel of land by warranty deed on August 25, 2016. *Id.* ¶ 14.

Plaintiffs' warranty deeds are subject to the "terms and conditions" of the 2005 Quitclaim Deed. *Id.* ¶¶ 13–14. The 2005 Quitclaim Deed states that the purchasers recognize and accept the purchase of land in an "as is, where is" condition; that the grantor of the property has made no warranties or representations as to the suitability of the property for any use or as to the physical condition of the property; and that the purchaser is not relying on any representations or covenants about the condition of the property (the "As Is Clause"). *Id.* ¶ 18. The 2005 Quitclaim Deed also states that the purchaser acknowledges that the property has been subject to ground movement and continues to move. *Id.*

In 2015, prior to Plaintiffs Darell and Jung purchasing their property, the DPP issued what Plaintiffs describe as a conditional approval for a sewer connection. *Id.* ¶ 20. The conditional approval stated that to receive a sewer connection permit, Plaintiffs needed to submit: (1) construction plans for review and approval; and (2) a geotechnical report to (a) confirm that there was no ground movement and (b) determine the proper design and construction to protect new sewer lines from future ground movement. *Id.* Plaintiffs Derrel and Jung assert

3

that they purchased the property in reliance on the conditional approval, expecting that a sewer permit would be granted if they met the conditions stated. *Id.* ¶ 21. Plaintiff 808 Farms did not receive a conditional approval. *Id.* ¶ 23.

Both sets of Plaintiffs applied for sewer connection permits. *Id.* ¶¶ 22–26. They each submitted a geotechnical report showing that there was no detectable ground movement. *Id.* ¶¶ 22, 25. Plaintiffs Derrel and Jung also submitted construction plans for their sewer connections in compliance with the conditional approval. *Id.* ¶ 22.

In February 2016, DPP denied 808 Farms' sewer connection application because the State had determined there was ground movement in the area, and that ground stability had not been established. *Id.* ¶ 23. The denial stated that the Hawaiʻi Housing Financial Development Corporation ("HHFDC")[2] "noted that no dwellings shall be constructed on the subject lot." *Id.* Subsequently, in a letter to Plaintiffs Derell and Jung on May 4, 2017, and in a letter to Plaintiff Sakatani on August 22, 2017, DPP informed Plaintiffs that it would not issue sewer connections or building permits until the HHFDC had, upon cessation of ground

---

[2] The HHFDC is the state of Hawaiʻi's housing finance and development agency. *See Hawaii Housing Finance & Development Corporation*, HAWAII.GOV, http://dbedt.hawaii.gov/hhfdc (last visited Feb. 19, 2019). It is a state agency tasked with "developing and financing low- and moderate-income housing projects and administering homeownership programs." *Id.* at http://dbedt.hawaii.gov/hhfdc/about/history_html (last visited Feb. 19, 2019).

movement, repaired the damage to Papahehi Place and installed new utility and sewer lines. *Id.* ¶ 26. The denial letters also stated that the "As Is Clause" of the 2005 Quitclaim Deed established that no warranties or representations were provided regarding the suitability of the property for any particular use. *Id.* The Complaint alleges that contrary to the DPP's denial of Plaintiffs' sewer applications, the DPP has issued sewer permits to other property owners on Papahehi Place, allowing them to construct residences in the area. *Id.* ¶ 28.

On August 3, 2018, Plaintiffs sued Defendants in state court. Doc. No. 1-2. Plaintiffs assert causes of action for declaratory relief (Count I) to declare that DPP must issue sewer and related building permits; for injunctive and mandamus relief (Count II) to require DPP to issue sewer and related building permits; for estoppel and vested rights (Count III) asserting that the City cannot deny them sewer connection permits after giving Plaintiffs a conditional approval on which they relied; for violation of due process rights under the United States and Hawaiʻi Constitutions (Count IV); for inverse condemnation under the United States Constitution (Count V); and for violation of 42 U.S.C. § 1983 (Count VI). *Id.*

On August 28, 2018, Defendants removed the case to this Court on the basis of federal question jurisdiction. Doc. No. 1. On August 31, 2018, Defendants moved to dismiss the Complaint for failure to state a claim upon which relief could be granted. Doc. No. 5. On September 24, 2018, Plaintiffs filed the present

5

motion to remand the case back to state court under the *Pullman* abstention doctrine.

## III. DISCUSSION

### A. Applicable Law

The *Pullman* abstention doctrine was first established in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). The doctrine authorizes federal courts to abstain from adjudicating federal constitutional challenges when a sensitive issue of state law would moot or narrow the federal issue and allows a state court to address the state law issue first. *See, e.g.*, *Pullman*, 312 U.S. at 501; *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). The doctrine provides federal courts with a way to "avoid both unnecessary adjudication of federal questions and 'needless friction with state policies.'" *Midkiff*, 467 U.S. at 236 (quoting *Pullman*, 312 U.S. at 500). Thus, "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Id.*

The Ninth Circuit employs a three-prong test to determine whether *Pullman* abstention is appropriate. Under the test, courts consider first whether the complaint touches a sensitive state area of social policy; second, whether federal constitutional questions can be avoided or narrowed by adjudication of a state law

question; and third, whether the possibly determinative state law issue is doubtful. *See C-Y Dev. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir. 1983); *Pearl Inv. Co. v. City & Cty. of S.F.*, 774 F.2d 1460, 1463–65 (9th Cir. 1985). If all three requirements are met, a district court may abstain from ruling on the federal issues until the state law issues are resolved in state court. *C-Y Dev. Co.*, 703 F.2d at 381.

**B.**     ***Pullman* Abstention**

For the reasons stated below, the Court concludes that all three *Pullman* requirements are met.

1. *The Complaint concerns sensitive state issues of social policy.*

Defendants have appropriately conceded that the first *Pullman* requirement is met. Doc. No. 17 at 6. The Complaint alleges that the City wrongfully denied Plaintiffs sewer and building permits, precluding them from developing their properties. Doc. No. 1-2. The Ninth Circuit has repeatedly held that land use issues such as this concern sensitive state social policy, satisfying the initial *Pullman* requirement. *See, e.g.*, *Pearl*, 774 F.2d at 1463; *Sinclair Oil Corp. v. Cty. of Santa Barbara*, 96 F.3d 401, 409 (9th Cir. 1996). This case not only touches, but hinges entirely on state land use issues concerning whether the City must issue sewer and building permits. Thus, the first *Pullman* requirement is met.

2. *Adjudication of the state law issues may moot or narrow the federal constitutional questions.*

The second *Pullman* requirement is whether adjudication of the state law

7

issues might dispose of or narrow the federal constitutional questions. This does not require resolution of the state law issue to completely dispose of the federal question. Rather, "[a] state law question that has the potential of at least altering the nature of the federal constitutional questions" is enough to satisfy the second *Pullman* requirement. *C-Y Dev. Co.*, 703 F.2d at 378; *see also Sinclair*, 96 F.3d at 409. For example, in *C-Y Development Company*, the court found that the second requirement was satisfied when resolving a state law issue in the plaintiff's favor would convert the plaintiff's permanent federal takings claim into a temporary takings claim. 703 F.2d at 380.

Adjudication of the state law claims at issue in this case may dispose of or narrow the federal claims in several respects. First, with respect to Plaintiffs' federal takings claim, adjudication of the state law claims may transform Plaintiffs' federal takings claim from a permanent taking to a mere temporary taking just as in *C-Y Development Company*. *See* Doc. No. 12-1 at 12. If, for example, the state court rules that local Honolulu ordinances or other relevant laws mandate issuance of sewer and building permits, Plaintiffs would no longer have a permanent takings claim. Although they may still have a claim for damages for a temporary taking for the time between when the permits were first denied and when they were

ultimately issued, the second *Pullman* requirement is still satisfied.[3] *See C-Y Dev. Co.*, 703 F.2d at 380.

Second, a state court's interpretation of the relevant land use laws may also dispose of or narrow Plaintiffs' federal due process claims. *See* Doc. No. 12-1 at 10–12. "In land use cases, the Ninth Circuit has frequently found [the second *Pullman* requirement] satisfied where a favorable decision on a state law claim would provide plaintiff with some or all of the relief he seeks." *Spirit of Aloha Temple v. Cty. of Maui*, Civ. No. 14-00535, 2016 WL 347298, at *12, 2016 U.S. Dist. LEXIS 9727, at *31 (D. Haw. Jan. 27, 2016) (quoting *VH Prop. Corp. v. City of Rancho Palos Verdes*, 622 F.Supp.2d 958, 963 (C.D. Cal. 2009)). Plaintiffs' due process claims seek damages and an injunction requiring the City to approve the sewer connection applications. Doc. No. 1-2 ¶¶ 80–81. Plaintiffs also assert a state law cause of action for mandamus, seeking the same relief. *Id.* ¶¶ 51–52. Thus, if the state court determines that the City is required to issue the sewer and building permits on the state law claims, Plaintiffs' due process claims will be altered or mooted because at least part of the relief sought would be achieved.

---

[3] Plaintiffs also assert that if the state court awards sufficient compensation for a taking under the Hawai'i Constitution, there will be no need to adjudicate the federal takings claim. *See* Doc. No. 12-1 at 12–13. However, Plaintiffs' Complaint does not allege a taking under the Hawai'i Constitution. The Complaint asserts a takings claim only under the federal Constitution. *See* Doc. No. 1-2 at 17–18. During oral argument, Plaintiffs' counsel asserted that they intend to bring an inverse condemnation claim under the Hawai'i Constitution.

Further, a state law determination of whether the City has unfettered discretion to issue the permits will also narrow or dispose of the federal due process claims. Due process claims hinge on the presence of a constitutionally protected life, liberty or property interest. *See Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007); *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Plaintiffs' claims that the City denied them due process by failing to issue the permits thus turns on whether receiving the sewer and building permits is considered a constitutionally protected interest. *See Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1019 (2011) ("To succeed on either [a procedural or substantive due process] claim, [Plaintiff] must first demonstrate that he was deprived of a constitutionally protected property interest.") (citing *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) and *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584 (9th Cir. 1998)).

The issuance of a permit may, in some cases, be a constitutionally protected property interest. *Id.* To have a constitutionally protected property interest in a permit, the claimant must have "a legitimate claim of *entitlement* to it." *Id.* (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)) (emphasis in original). Whether a claimant is legitimately entitled to the issuance of a permit depends on whether issuance of the permit is discretionary or mandatory. *Id.* "For example, [the Ninth Circuit has] held that such an entitlement

to a government permit exists when a state law or regulation requires that the permit be issued once certain requirements are satisfied." *Id*. In *Gerhart*, the Ninth Circuit dismissed the plaintiff's due process claims because under applicable Montana law, the permits sought were discretionary, rather than mandated under specified conditions. *Id.* at 1020; *see also Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988) (holding that city defendant had violated plaintiff's substantive due process rights by denying permit application when it did not have the discretion to do so because plaintiff had complied with all requirements).

If the City has complete discretion to issue the permits, Plaintiffs' due process claims will fail. *See Gerhart*, 637 F.3d at 1021. Therefore, the state court's ruling on the discretionary nature of the issuance of sewer and building permits under applicable state and local law may be determinative of the due process claims. Thus, because adjudication of the state law issues may dispose of or narrow the federal constitutional claims, the second *Pullman* requirement is satisfied.

3. *The potentially determinative state law issues are doubtful.*

The third *Pullman* requirement is whether the outcome of the potentially determinative issue of state law is uncertain. *See C-Y Dev. Co.*, 703 F.2d at 380. "Uncertainty for purposes of *Pullman* abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of

11

state law." *Pearl*, 774 F.2d at 1465. In the land use context, the Ninth Circuit takes a "liberal approach" to the third requirement because questions addressing land use regulations by nature turn "on the peculiar facts of each case in light of the many [applicable] local and state-wide land use laws." *Sinclair*, 96 F.3d at 410 (quoting *Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 841 (9th Cir. 1979)); *Spirit of Aloha*, 2016 WL 347298, at *13, 2016 U.S. Dist. LEXIS 9727, at *36–37; *see also Pearl*, 774 F.2d at 1465 (holding that whether issuance of building renovation permits was required was unclear under Pullman despite there being "much force" to the contention that "the district court could have ascertained the established standards applied by the California courts in reviewing zoning decisions").

Here too, the resolution of the potentially determinative state land use issues is unclear. Determining whether the City must issue the building and sewer permits, or whether the City abused its discretion in denying them, will require interpretation of local ordinances that delineate the discretionary nature of the permits. For example, Revised Ordinance of Honolulu ("ROH") 18-5.1, specifies requirements for the issuance of building permits, and ROH 14-1.3 and 14-1.6 relate to the issuance of sewer connection permits. ROH 18-5.1 states in relevant part:

> The application, plans, specifications, computations, and other data filed by an applicant for a permit shall be reviewed by the building official. The

12

> building official shall cause such plans to be reviewed by any other appropriate department of the city and the state to review compliance with laws and ordinances under their jurisdiction. If the work described in an application for permit and the plans filed therewith conform to the requirements of this code and other pertinent laws and ordinances, and the fee specified in Section 18 6.1 has been paid, the building official shall issue a permit therefor to the applicant[.]

ROH 14-1.3 addresses the authority to administer and enforce provisions of the ordinance addressing sewer connections. ROH 14-1.6 states that a sewer connection permit will only be issued after an application for a building permit has been filed, and that no connection will be allowed if the sewer system is inadequate to accommodate additional sewage. The ordinances, however, are unclear regarding whether the issuance of building and sewer permits is discretionary, or whether permits must be issued upon the specified requirements being met.

The parties have not cited any Hawaiʻi state court case interpreting ROH 18-5.1, ROH 14-1.3, or ROH 14-1.6, and the Court is aware of none. Moreover, issuance of a building permit under ROH 18-5.1 requires compliance with "other pertinent laws and ordinances." The parties have likewise not cited any cases addressing any other potentially relevant laws that would inform the Court whether the issuance of sewer and building permits is discretionary. At oral argument, counsel for the City conceded that there was no caselaw addressing whether the City is required to issue the building and sewer permits, or whether it is discretionary. Without any caselaw on point, this Court "cannot predict with any

13

confidence" how the Hawai'i Supreme Court would decide this issue. *Pearl*, 774 F.2d at 1465.

Despite the lack of relevant caselaw, Defendants argue that "the permits requested by Plaintiffs do not amount to property, even under the Hawai'i Supreme Court's liberal interpterion of property." Doc. No. 17 at 7. Defendants assert in conclusory fashion that because the issuance of the permits is "discretionary," the due process claims must be dismissed. *Id.* The local ordinance, however, states that the City "shall issue a permit" if the work described in an application "conform[s] to the requirements of this code and other pertinent laws and ordinances." ROH 18-5.1. Thus, despite the City's arguments to the contrary, the ordinance's language does not appear on its face to grant discretion.[4] The City's conclusory arguments demonstrate that whether the ordinances grant unfettered discretion to the City is unclear. Without caselaw on point, the Court concludes that whether the City must issue the sewer and building permits, either because they are non-discretionary or because the City abused its discretion in denying them, is unclear. The Court finds, therefore, that the third *Pullman* requirement is met.

---

[4] Use of the word "shall" here does not necessarily mean the issuance of permits is non-discretionary. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 761 (2005) (discussing "deep-rooted nature of law enforcement discretion" even where ordinance used "shall").

14

## C. Remand of the State Law Claims

Having concluded that all three requirements are met, the Court abstains from exercising its federal question jurisdiction under *Pullman*. Having decided to abstain, the Court must address the proper procedural course forward. The *Pullman* doctrine "does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise; it serves the policy of comity inherent in the doctrine of abstention; and it spares the federal courts of unnecessary constitutional adjudication." *Harrison v. Nat'l Ass'n for the Advancement of Colored People*, 360 U.S. 167, 177 (1959). Indeed, the Ninth Circuit has held that when invoking *Pullman*, courts should "stay the federal constitutional question 'until the matter has been sent to state court for a determination of the uncertain state law issue.'" *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 940 (9th Cir. 2002) (quoting Erwin Chemerinsky, *Federal Jurisdiction,* § 12.2.1, at 737 (3d ed.1999)); s*ee also VH Property Corp.*, 622 F.Supp.2d at 967–69. Thus, the Court remands the state law claims back to state court and stays the federal claims. This will allow the state court to address the sensitive and unclear issues of state law, which in turn will most likely narrow or moot the federal constitutional questions.

**D.     Dismissal of the Federal Takings Claim**

Both parties concede that the federal takings claim is unripe.[5]  In *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 173 (1985), the Court held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim [a taking under the U.S. Constitution] until it has used the [State] procedure and been denied just compensation."  The Court held that the respondent's federal takings claim was unripe because it had "not shown that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its takings claim is premature." *Id.*  Thus, "[w]hen the state provides a procedure by which a party may seek just compensation, such as an inverse condemnation cause of action, the plaintiff must seek relief in state court before bringing a claim in federal court." *Adam Bros. Farming, Inc. v. Cty. of Santa Barbara*, 604 F.3d 1142, 1147–48 (9th Cir. 2010).

Hawaiʻi law provides sufficient procedures for obtaining just compensation

---

[5] Plaintiffs argue in their brief that "Plaintiffs were in the process dictated by the U.S. Supreme Court to ripen their federal takings claims when the City removed the case to this court."  Doc. No. 12-1 at 20.  At oral argument too, Plaintiffs asserted that their Complaint contains a cause of action for inverse condemnation under Hawaiʻi state law.  The Court, however, does not find any assertion in Plaintiffs' Complaint of an inverse condemnation claim under Hawaiʻi's Constitution or statutory provisions.  Instead, the Complaint asserts only a federal takings claim.

for takings claims brought under the Hawaiʻi Constitution.  Not only does Hawaiʻi's Constitution require just compensation, Hawaiʻi's statutory provisions provide procedures for seeking it.  *See* HRS §§ 101-9 to 101-11.  In accordance with these statutory provisions, Plaintiffs may seek compensation for alleged takings in civil actions.  Because Plaintiffs may bring a cause of action for inverse condemnation under Hawaiʻi law in state court, they must utilize that procedure before bringing a federal takings claim.  *See Austin v. City & Cty. of Honolulu*, 840 F.2d 678, 681 (9th Cir. 1988) (holding that the Hawaiʻi Constitution's just compensation clause was sufficient to require seeking redress in state court under *Williamson*).  Thus, the Court dismisses as premature Plaintiffs' federal takings claim without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiffs' motion to remand the state law claims.  Consistent with this Order, Counts I, II, and III are remanded to state court; the state due process claim in Count IV is remanded to state court; and Count V, the federal takings claim, is dismissed without prejudice.  The remaining claims in Counts IV and VI are stayed pending the state court's determination of the issues remanded.  The Court administratively closes this case and terminates all pending motions.  All scheduled hearings are removed from the calendar.  The parties are instructed to file with the Court as soon as is reasonably

practical a written submission either attaching a final state court decision or explaining a change in circumstances that warrants the reopening of this case or the permanent dismissal of the stayed claims. Upon such written submission, the case will be reopened if warranted. If this case is reopened, any pending motions or other matters stayed by this Order may, by written request, be reset for hearing or supplemental briefing without the need to refile.

    IT IS SO ORDERED.

    DATED: Honolulu, Hawai‘i, February 28, 2019.

Jill A. Otake
United States District Judge